Filed 2/27/26  P. v. Rios CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>  v.<br><br>SAUL MEZA RIOS,<br><br>       Defendant and Appellant. | C103012<br><br>(Super. Ct. Nos. 00F05771,<br>03F04091, 04F01189) |

Defendant Saul Meza Rios appeals from the trial court's order denying motions to set aside his guilty pleas and vacate his convictions in three cases under Penal Code[1] sections 1016.5 and 1473.7.  The trial court found Rios's motions to be untimely under both statutes and found Rios failed to establish prejudicial error under section 1473.7 by a preponderance of the evidence.  Finding no merit in Rios's contentions of error as to the trial court's untimeliness determinations, we affirm.

---

[1]  Undesignated statutory references are to the Penal Code.

1

BACKGROUND

Rios was lawfully admitted to the United States in 1988. Between 1992 and 2008, Rios was arrested for, charged with, and/or convicted of various crimes. This appeal arises from the trial court's denial of Rios's motions to vacate three of his convictions.[2] Each motion was supported by: (1) declarations from Rios, his wife, M.V., an immigration attorney, Christopher Todd, and Rios's retained attorney, Erin Radekin; (2) case-specific documents such as complaints and minute orders; (3) a picture of Rios's 1988 temporary resident card; and (4) a letter of recommendation from Rios's employer in Mexico. The prosecution opposed the motions, noting that the transcripts pertaining to the trial court's advisements at the time of taking Rios's pleas were missing. The following generally summarizes the statements in the declarations.

In 2000, Rios was charged with inflicting corporal injury on M.V. The public defender advised Rios of an offer to plead to assault with a deadly weapon or force likely to produce great bodily injury instead but explained the conviction could result in Rios's deportation from or inadmissibility to the United States. The public defender explained the plea offer was "a safer option" than pleading to the inflicting corporal injury charge because it was possible the conviction would not be considered a crime of domestic violence. The public defender, however, "said nothing about the effect of this conviction on an application for legal immigration status." Rios pled no contest to assault with a deadly weapon or force likely to produce great bodily injury (assault case).

In 2003, Rios was charged with multiple offenses relating to a domestic dispute with M.V. Rios ultimately pled no contest to being a felon in possession of a firearm (unlawful possession case). Rios and the public defender did not discuss immigration

[2] The trial court also considered a motion to vacate the conviction in a fourth case—a case in which Rios pled no contest to misdemeanor carrying a concealed weapon. The trial court's denial of that motion is not the subject of this appeal.

2

consequences in that regard. Rios declared he was not aware that the plea would make him deportable, inadmissible, and ineligible for legal immigration status.

In 2004, Rios pled no contest to violating a protective order after having suffered a prior conviction for violating a protective order relating to his attempts to contact M.V. Rios declared he was not aware that the conviction "could result in denial of an application for lawful immigration status and also be a ground for denial of a defense against removal." As to all three cases, Rios declared that, if he had known the immigration consequences of the no contest pleas, he would have asked counsel to negotiate safer plea bargains or he would have gone to trial.

In late 2004 or January 2005, Rios was arrested by the United States Immigration and Customs Enforcement and put in removal proceedings. In January 2005, the immigration judge issued the initial removal order based on Rios being present in the United States without permission or parole and having committed a crime involving moral turpitude based on his unlawful possession conviction; Rios was deported. Rios subsequently reentered without permission and was deported from the United States multiple times. All of the removal orders entered after 2005 were reinstatements of the initial removal order.

In 2008, Rios pled guilty to reentering the United States after having been deported and was sentenced to 37 months in prison. In 2011, following the completion of Rios's sentence, the initial removal order was again reinstated, and he was deported soon thereafter. Rios "was given a formal warning explaining that he was permanently inadmissible in light of the fact he was previously deported and an aggravated felon— though the particular conviction referenced as an aggravated felony is not specified." M.V. and Rios ended their relationship in 2008.

In 2018, Rios reestablished contact with M.V. and they were married in 2022. Also in 2018, M.V. consulted with an attorney, Maribel Herrera, and began investigating how Rios could obtain legal status in the United States. In August 2021, Herrera

3

informed Rios and M.V. that Rios needed postconviction relief before he could proceed with an application for legal status and referred them to Radekin.[3] That same month, M.V. and Rios retained Radekin to investigate grounds for postconviction relief. In November 2022, Radekin informed M.V. that three of Rios's convictions had negative immigration consequences and there were grounds to vacate them. Radekin later identified a fourth case that needed to be vacated.

Rios and M.V. retained Radekin to file the motions to vacate in November 2022. In her declaration, Radekin detailed her investigations and efforts to analyze the legal bases for Rios's motions and declared that she tried to contact Herrera between October 2021 and February 2022 to no avail, later learning that Herrera had a death in the family and was taking time off. In February 2022, Todd was retained to assist in the evaluation of grounds for postconviction relief and preparation of the motions to vacate. The motions to vacate Rios's prior convictions were filed in June 2023.

At the hearing on the motions to vacate, the prosecution cross-examined Rios via Zoom. After taking the matter under submission, the trial court denied Rios's motions. The trial court found Rios not credible as to when he learned that one or more of his convictions possibly had immigration consequences and held that he did not meet his burden of proof to show he exercised reasonable diligence in filing the motions under either section 1016.5 or section 1473.7. The trial court further found that Rios failed to establish prejudicial error by a preponderance of the evidence under section 1473.7. The trial court's more specific statements as to the reasonable diligence findings are discussed *post*, as pertinent in the Discussion section. Rios appeals.

---

[3] As the trial court noted, no explanation is provided as to what occurred between the time M.V. began investigating how Rios could obtain legal status in the United States and Herrera's referral to Radekin.

DISCUSSION

I

*Section 1016.5*

A.   *Legal Background*

Under section 1016.5, subdivision (a), a trial court is required to administer the following advisement verbatim on the record before accepting a plea of guilty or nolo contendere from a defendant:  "If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  If the court fails to advise a defendant in accordance with the foregoing, the defendant may move to vacate the judgment and withdraw the plea of guilty or nolo contendere and enter a plea of not guilty.  (§ 1016.5, subd. (b).)

Although section 1016.5 contains no explicit time bar, "[a] postjudgment motion to change a plea must be 'seasonably made.'  [Citation.]  Thus, the trial court may properly consider the defendant's delay in making his application, and if 'considerable time' has elapsed between the guilty plea and the motion to withdraw the plea, the burden is on the defendant to explain and justify the delay."  (*People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1618 (*Castaneda*); *People v. Kim* (2009) 45 Cal.4th 1078, 1097-1098 [acknowledging a diligence requirement for a motion to vacate a plea under § 1016.5].)

As our Supreme Court explained, "[t]he diligence requirement is not some abstract technical obstacle placed randomly before litigants seeking relief, but instead reflects the balance between the state's interest in the finality of decided cases and its interest in providing a reasonable avenue of relief for those whose rights have allegedly been violated."  (*People v. Kim*, *supra*, 45 Cal.4th at p. 1097.)  To satisfy the burden of showing due diligence when seeking to vacate a plea after a substantial delay, the defendant must " 'aver not only the probative facts upon which the basic claim rests, *but*

5

*also the time and circumstances under which the facts were discovered*, in order that the court can determine as a matter of law whether the litigant proceeded with due diligence; a mere allegation of the ultimate facts, or of the legal conclusion of diligence, is insufficient.' " (*Id.* at pp. 1096-1097.)

On appeal, we review the trial court's denial of a section 1016.5 motion to vacate for abuse of discretion (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 (*Zamudio*)), reversing only where the court has exercised its "discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice" (*People v. Limon* (2009) 179 Cal.App.4th 1514, 1518).

B.      *The Trial Court's Ruling*

The trial court noted that section 1016.5 has been operative since 1977, and Rios filed the motion to withdraw his plea in 2023—18 years after Rios was first deported and on notice that his conviction had immigration consequences as specified in section 1016.5. The trial court further noted that Rios was deported five times between 2005 and 2008 and, with the assistance of counsel, pled guilty to the federal charge of illegal entry following his sixth unauthorized entry into the United States.

The trial court found Rios's statement of facts in his declaration concerning when and how he learned of the adverse immigration consequences and why he waited so long to challenge the pleas was contradicted by other evidence. The court explained that Rios declared he did not learn of the adverse immigration consequences of his pleas until 2021 when Herrera referred him to Radekin, and the immigration court did not tell him that he was being deported because of a prior conviction but instead that he was being deported because he was undocumented. However, Todd declared "the 2005 removal order indicated that [Rios] was charged with being present without permission or parole and having committed a crime involving moral turpitude—the [unlawful possession] conviction." That removal order was reinstated several times thereafter. Also, the trial court pointed to Radekin's declaration stating the public defender's notes from the assault

6

case indicated there were discussions about obtaining an immigration-safe plea. The trial court found this relevant to the timeliness of filing the motions "because it shows that [Rios] was aware that there were convictions that would result in his deportation and that he was subsequently deported six times, each removal order listing a crime of moral turpitude."

The trial court further found that, even if Rios was not aware of the adverse immigration consequences based on the removal orders, the 2011 formal warning from the immigration judge that he was permanently inadmissible based on the previous deportations and because he is an "aggravated felon" put Rios on notice that at least one of his convictions had immigration consequences. Rios, however, waited 12 years to file his motions to vacate, and only started investigating his options for obtaining legal status in the United States when he decided to reconnect with his family after spending seven years in Mexico. The trial court also explained Rios provided no transcripts, minute orders, or copies of any plea agreement from the federal proceeding to support his "claim that he was told he was being deported because of his unlawful status and not also because of the consequences of any of his pleas" in the state criminal cases.

The trial court ultimately found Rios not credible and that he did not meet his burden of proving he exercised reasonable diligence in filing the motions. The trial court also found the prosecution would be prejudiced by vacating the convictions. Because the trial court found the motions to be untimely, it declined to analyze the remaining elements pertaining to section 1016.5 relief.

C.      *The Trial Court Did Not Abuse Its Discretion*

Rios argues his testimony was credible and the trial court erred in finding the motions were untimely. Rios asserts he exercised reasonable diligence because he retained counsel within a month of learning he needed postconviction relief. We find no merit in these contentions.

7

First, Rios argues the trial court erred in taking "as a starting point for measuring delay when Rios learned, generally, that immigration consequences may attach to a criminal conviction" because "in evaluating whether a defendant was aware of the three statutory immigration consequences at the time of his or her plea, the court must evaluate the defendant's knowledge *at the time of the plea*—not when he or she received advice as to immigration consequences in another case or in another context." (Citing *People v. Akhile* (2008) 167 Cal.App.4th 558, 564; *Zamudio*, *supra*, 23 Cal.4th at p. 209.) The problem with this argument is that the law pertinent to the timing and scope of the section 1016.5 advisement at the time of a plea has no bearing on whether the trial court abused its discretion in finding that Rios untimely filed his motions for relief. Although a defendant seeking relief under section 1016.5 must show that "at the time of his plea the defendant was not aware of the possible immigration consequences of his plea," that showing is separate from demonstrating timeliness. (*Castaneda*, *supra*, 37 Cal.App.4th at p. 1622.) A motion under section 1016.5 is seasonally made if it was brought with reasonable diligence upon discovery of facts that a conviction " 'may have' " one or more of the specified immigration consequences identified in section 1016.5. (*Zamudio*, at p. 204.)

Second, Rios argues the trial court's credibility finding was erroneous regarding his testimony that he did not know the immigration consequences of his convictions until 2021. We disagree. " ' "We accept the trial court's factual findings and credibility determinations if supported by substantial evidence." ' " (*People v. Flores* (2021) 70 Cal.App.5th 100, 113.) Here, Todd declared the 2005 initial removal order was based, in part, on Rios's unlawful possession conviction, which was charged as a crime involving moral turpitude. Todd further declared that, in 2011, Rios was given a formal warning that he was permanently inadmissible based, in part, on being an aggravated felon. Thus, at the latest, Rios was on notice in 2011 that at least one of his convictions " 'may have' " one or more of the specified immigration consequences identified in section 1016.5.

8

(*Zamudio*, *supra*, 23 Cal.4th at p. 204.)  This evidence supports the trial court's credibility determination.

Finally, Rios argues the trial court "erred in failing to consider Rios' knowledge of immigration consequences as to each conviction separately in determining the starting point for assessing delay" and that the appropriate starting point is August 2021 when Herrera informed him of the need for postconviction relief.  Rios again merely disagrees with the trial court's findings based on his view of the facts.  The standard of review, however, is abuse of discretion and he provides no basis for concluding the trial court's decision was "arbitrary, capricious, or patently absurd," and resulted in a "miscarriage of justice."  (*People v. Limon*, *supra*, 179 Cal.App.4th at p. 1518.)

Given the considerable time that elapsed between Rios's pleas and the filing of the motions to withdraw the pleas, Rios had the burden of explaining and justifying the delay.  (*Castaneda*, *supra*, 37 Cal.App.4th at p. 1618.)  Although Rios was on notice by 2011 that at least one of his convictions had possible negative immigration consequences, he made no attempt to investigate the consequences of his pleas until 2018.  Rios did not meet his burden of explaining or justifying the delay.  Reasonable diligence is *not* measured by when a defendant retains counsel or receives a legal opinion that the defendant needs postconviction relief, as Rios suggests.  (See *Castaneda*, at p. 1622 [a § 1016.5 motion is seasonally made if it was brought with reasonable diligence upon discovery of *facts* pertaining to the possible immigration consequences of the plea].)  That Rios did not know the legal immigration consequences of his convictions until 2021 is of no moment.  We accordingly affirm the denial of Rios's section 1016.5 motions.

II

*Section 1473.7*

Rios challenges the trial court's findings that his section 1473.7 motions were untimely, and Rios failed to establish prejudicial error by a preponderance of the

9

evidence. Because we affirm the trial court's untimeliness finding, we do not address the arguments as to prejudice.

      A.     *Legal Background*

Section 1473.7 became effective on January 1, 2017 (Stats. 2016, ch. 739, § 1), and authorizes a motion to vacate a conviction on the ground the conviction is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).) The moving party must establish by a preponderance of the evidence both a lack of understanding of the immigration consequences of the conviction and prejudice. (§ 1473.7, subd. (f)(1).)

A section 1473.7 motion "shall be deemed timely filed at any time in which the individual filing the motion is no longer in criminal custody" unless the trial court determines it was not filed with reasonable diligence after the later of (1) the date the moving party received "a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal or the denial of an application for an immigration benefit, lawful status, or naturalization" or (2) the date a final removal order was issued against the moving party based on the existence of the conviction or sentence that the moving party seeks to vacate. (§ 1473.7, subd. (b)(1)-(2).) When the triggering events identified in section 1473.7, subdivision (b) predate the effective date of the statute, as is the case here, reasonable diligence is evaluated "by determining whether or when the [moving party] had a reason to inquire about new legal grounds for relief, and assessing the reasonableness of the [moving party's] diligence from that point forward." (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 765 (*Alatorre*).)

The trial court's interpretation of the reasonable diligence standard presents a question of law. (*Alatorre*, *supra*, 70 Cal.App.5th at p. 755.) Thus, on appeal from a

10

section 1473.7 ruling, we engage in independent review. (*People v. Vivar* (2021) 11 Cal.5th 510, 525.) Under that standard, we exercise independent judgment " 'to determine whether the facts satisfy the rule of law.' " (*Id.* at p. 527.) While we do not defer to factual findings drawn "entirely from written declarations and other documents" reviewed by the trial court on a "cold record," we do extend "particular deference to factual findings based on the trial court's personal observations of witnesses." (*Id.* at pp. 527-528.) We "may not simply second-guess factual findings that are based on the trial court's own observations." (*Id.* at p. 527.)

### B.  *The Trial Court's Ruling*

The trial court explained that, when Rios wanted to reunite with his family in 2018, "he had a reason to seek legal help and investigate new forms of postconviction relief." Although M.V. consulted with an immigration attorney in 2018, it was "unclear if and when this attorney was retained or simply consulted," and there was no explanation for what occurred between 2018 and 2021. The trial court also reiterated its finding that Rios was not credible regarding when he learned that his convictions had adverse immigration consequences. The trial court thus found that Rios did not meet his burden of showing he exercised reasonable diligence in filing his motions to vacate under section 1473.7.

### C.  *The Section 1473.7 Motions Were Untimely*

Rios argues that, because the last removal order was issued well before 2017, when section 1473.7 took effect, the appropriate trigger date for assessing delay is August 2021, when Herrera informed him that postconviction relief was necessary. In that regard, Rios asserts the trial court erred in holding the period of delay between 2018 and 2021 against him, "notwithstanding the rule stated in *Alatorre*." In the alternative, Rios asserts that remand is appropriate because the trial court misunderstood the scope of its discretion under section 1473.7. We find no merit in these contentions.

11

At the outset, we reject Rios's argument that the trial court did not understand the scope of its discretion. Rios asserts that, because nothing in the trial court's decision indicates the court was aware that it could grant the section 1473.7 motions without assessing timeliness, as explained in *Alatorre*, *supra*, 70 Cal.App.5th at page 757, the matter should be remanded. Where the record is silent, we presume the trial court is aware of the applicable law, including the scope of its statutory discretion. We cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of its discretion. (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

Turning to the trial court's ruling, Rios misinterprets *Alatorre*. In *Alatorre*, the appellate court explained that the proper starting point for assessing delay in filing a section 1473.7 motion is when the defendant "*had reason to seek* legal help or otherwise *investigate* new forms of postconviction relief, and evaluate diligence from that point forward, in light of all the circumstances." (*Alatorre*, *supra*, 70 Cal.App.5th at p. 753, italics added.) *Alatorre* does not stand for the proposition that diligence is measured from when the movant receives a legal opinion that postconviction relief is necessary and appropriate, as Rios suggests.

Here, after M.V. and Rios reconciled in 2018, M.V. started investigating how Rios could obtain legal status in the United States. As the trial court noted, there is no evidence or explanation of what occurred between 2018 and 2021. All that is known is that M.V. "consulted"[4] with Herrera in 2018, Herrera referred Rios to Radekin in 2021, Rios retained Radekin in 2021, and Radekin investigated the merits of postconviction relief and filed the motions in 2023. Based on the lack of any explanation regarding the delay between 2018 and 2021 and the trial court's credibility finding, which we uphold

---

[4] Neither M.V. nor Rios declared that either of them retained Herrera.

*ante*, we conclude the trial court did not err in finding Rios's section 1473.7 motions untimely.  We accordingly affirm the trial court's order.

## DISPOSITION

The trial court's order denying Rios's motions to vacate under sections 1016.5 and 1473.7 is affirmed.

/s/

BOULWARE EURIE, J.

We concur:

/s/

ROBIE, Acting P. J.

/s/

RENNER, J.